THE PEOPLE OF THE STATE OF NEW YORK ex rel. RUTH PATTERSON, Appellant, against BOARD OF EDUCATION OF THE CITY OF SYRACUSE et al., Respondents.

Fourth Department, March 21, 1945.

*Ruth Patterson,* appellant in person.

*James C. Tormey, Corporation Counsel (John F. Hmiel* of counsel), for respondents.

LARKIN, J. Petitioner, a teacher in the public schools of the City of Syracuse, with tenure, and apparently a member of the New York State Teachers' Retirement System, sought, pursuant to article 78 of the Civil Practice Act, to compel respondents, the Board of Education and Superintendent of Schools of Syracuse, to reappoint her to active duty, after a year's leave of absence, granted by the Board because of her personal illness.

The matter was heard by the Onondaga Special Term on the petition, with exhibits attached, the answer and respondents' bill of particulars. The parties evidently assumed that there were no disputed questions of fact. The petitioner's application was granted provided that, after a mental and physical examination by two physicians to be designated by the respondent Board, the latter determined that she was physically and mentally qualified to teach. From that order petitioner alone appealed.

While petitioner has tenure under the Education Law, she is not a public officer, but an employee of the Board. Her employment is contractual (*Steinson* v. *Bd. of Education of N. Y.,* 165 N. Y. 431) and subject to such reasonable regulations as the Board may adopt.

Rule 82 of the Board's rules authorizes a leave of absence, among other reasons, on account of personal illness. It forbids granting a leave to engage in work other than teaching for hire. At the expiration of the leave the teacher is entitled to reinstatement to the first vacancy for which she is qualified. By rule 83 where leave has been given because of personal illness, no reappointment is authorized without the employee's passing such physical examination as the Board's health officer may prescribe. Both rules are reasonable.

On March 31, 1942, petitioner applied to respondent for a year's leave on account of the condition of her health. Her request was granted, effective May 9, 1942. It does not appear that, as required by rule 82, petitioner, as a condition precedent to the granting of the leave, filed with the Board a physician's certificate. Indeed there is some faint inference in the record that the application was at the suggestion of members of the Board. Shortly after May 9th, petitioner had a complete physi-

cal examination, including X ray, by two Syracuse physicians. Their reports she, on May 26th, submitted to the Board's health officer. The same day he examined her. On May 28th he certified that he found her in good physical condition but expressed no opinion as to any possible mental condition. On June 1, 1942, twenty-three days after the beginning of the year's leave, petitioner in writing, submitting to the Board the result of the three examinations, asked that her leave be canceled and that she be restored to active duty in the near future and not later than January, 1943. The respondent Board merely acknowledged receipt of her letter stating that it had been filed. In August of the same year she was examined by a psychiatrist of New York City who reported that she was psychiatrically sound. This report, on September 1st, she submitted to the Board with a request that she be restored to duty in September, 1942. Apparently the Board made no reply. On April 9, 1943, petitioner wrote from Rochester, N. Y., to the Board asking an extension of her leave until January, 1944, that she might do defense work. Receiving no reply to her letter, on May 3, 1943, she again wrote the Board stating in substance that after a thorough physical examination she had been employed in a defense plant and was working six days a week, eight hours a day, in essential war work. She called attention to the previous reports as to her physical and mental condition which she had filed with the Board. She stated in the same letter that, in the event her application for an extension of her leave was denied, she wished her letter to be treated as a request for reappointment May 9, 1943, the expiration of the year's leave. On May 5th the Board passed a resolution denying her application for an extension and under date of May 7th sent her a registered letter to that effect. She received this letter on May 8th. On May 9th she wired the president of the Board that she was available for immediate reappointment and, calling attention to the Board's failure to reply to her request for reappointment, asked to be advised. The Board made no reply. Then followed an exchange of letters between the respondent superintendent of schools and petitioner. The superintendent took the position that she no longer had tenure and petitioner disputed that. In September the present proceeding was begun. After answering, the Board on October 9, 1943, acting on the report of the respondent superintendent that petitioner from May 9, 1943, had been absent from school during the regular sessions without permission or leave of absence, and on his recommendation, adopted a resolution

stating in substance that petitioner by reason of her absence without leave or the Board's consent had abandoned her contract of employment, and that for that cause she was dismissed, the Board refusing to reappoint her as a teacher.

The foregoing constitute in substance the facts upon which the Special Term decided this matter

The respondents' position that the petitioner abandoned her contract is untenable. For over a year prior to her dismissal she had diligently sought reappointment. While it is true that applying to petitioner's leave of absence, by analogy, the judicial rule applicable to resignations by public officers who seek, after their acceptance by a body or officer authorized to accept same, to withdraw them without the consent of the body or officer so accepting, the Board was not required to grant petitioner's request of June 1, 1942, for cancelation of the leave, still it knew then and again in May, 1943, and prior to May 9th, the date of expiration of the leave, that she sought reinstatement. It had been furnished with reports of her physical and mental condition, the result of examinations made after the commencement of the leave. One such report was from the very officer specified in rule 83. Knowing then on May 5, 1943, that petitioner wished reinstatement, a fair construction of rule 83, if the Board was to decline to act on her application without further examination, required it to say so to petitioner and not leave her in the dark as to its intention to declare a forfeiture. By its conduct the Board estopped itself to claim on the hearing herein that petitioner had been absent without leave or without its consent. Under all the circumstances disclosed by this record the Board's construction of rules 82 and 83 as applied to the instant situation is unreasonable. The authority upon which it relies (*Appeal of Mildred Stephens,* 60 N. Y. St. Dept. Rep. 207) has no application to the facts herein disclosed.

Reasonably construed rule 82 authorizes the granting of a leave of absence to a teacher because of ill health. At the expiration of the leave if the Board's health officer, after such physical examination as he may prescribe, reports to the Board that she is physically fit to teach, it then becomes its duty, as to a teacher with tenure, to reappoint her to the first vacancy in any position for which she may be qualified. Nothing in the rule specifies just when that examination must be had. There is nothing to prevent the Board from waiving it. There may be situations where it might well do so. If it knows that a teacher on leave believes she has furnished satisfactory proof

of her physical condition so that a further examination will not be necessary, but the Board knows that it intends to require a strict compliance with rule 83, then common fairness requires that it so state. That was the situation here. Upon this record the petitioner has shown a right to reappointment but in view of the length of time which has elapsed since petitioner's examination by the health officer May 26, 1942, only after she has submitted to such physical examination as the health officer, under rule 83, prescribes, and further if he reports to the Board, as the result of such examination, that he finds her physically fit to teach.

While it is true that the Board is charged by the Education Law with the supervision of the teaching staff of the Syracuse schools, and that it cannot exercise too much care in seeing that none but those fit to teach are employed, still the Board is not left without remedy if petitioner is reappointed. Her tenure does not make her immune from removal. Under subdivision 3 of section 872 of the Education Law, giving her tenure, she still holds her position only " during good behavior and efficient and competent service." So in the interests of the public service if the Board at any time has just ground to prefer charges against the petitioner, it can file them, and if substantiated on a hearing, it can dismiss her. Thereby the public service is protected and, at the same time, the petitioner's right to tenure and, if a member of the New York State Teachers' Retirement System, her retirement rights cannot be jeopardized. These rights of petitioner are valuable ones. They ought not to be destroyed nor impaired by a narrow construction of the Board's rules. If the Board has reasonable basis for believing that petitioner's conduct, as a teacher, is inimical to the best interests of the public schools of Syracuse, and can, by evidence, establish that fact, it can dismiss her, but it ought not to attempt to accomplish that end by a narrow and unreasonable construction of rule 83.

Nor did the petitioner by working in a defense plant, for hire, during the period of her leave of absence, violate rule 82. From the very beginning of the leave she had sought without success the consent of the Board to cancelation of it. Under rule 82 it was without pay. She had furnished the Board the results of various physical and mental examinations, one by the Board's own health officer. Every examination made resulted in a finding that she was physically qualified to teach. Under such circumstances it cannot be said that by becoming gainfully employed in other than teaching, she can be charged with violating the letter or spirit of rule 82.

Although possibly the order from which this appeal was taken is not a final one, as defined by section 1300 of the Civil Practice Act, since the parties have raised no such question, but all have treated it as final, we have so considered it. (See Civ. Prac. Act, § 1304 and *Matter of Bly* v. *Witmer,* 263 App. Div. 1069.)

For the foregoing reasons petitioner is entitled to reinstatement now, to the first vacancy in any position for which she may be qualified, in accordance with rule 82, provided she submits to such physical examination as the school health officer may prescribe, pursuant to rule 83, and is certified by him to the Board to be physically fit to teach. The order of the Special Term is modified in certain respects in accordance with this opinion, without costs.

All concur. Present — TAYLOR, P. J., DOWLING, HARRIS, LARKIN and LOVE, JJ.

Order modified on the law in accordance with the opinion and as modified affirmed, without costs of this appeal to any party. [See *post,* p. 807.]